UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOEL B. ROSEN<br>**UNITED STATES MAGISTRATE JUDGE** | **MITCHELL H. COHEN COURTHOUSE**<br>**1 John F. Gerry Plaza, Room 2060**<br>CAMDEN, NJ 08101-0887<br>(856) 757-5446 |

May 13, 2005

Orlando C. Foreman, Pro Se
#02361-015 FCI Fairton
P.O. Box 420
Fairton, NJ 08320

Daniel J. Gibbons, Esq.
Office of the United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102

> **Re:** <u>Foreman v. Bureau of Prisons, et al.</u>
> Civil No. 04-5413 (RBK)

**<u>LETTER OPINION AND ORDER</u>**

Dear Litigant and Counsel:

**I. <u>Introduction</u>**

Presently before the court is the plaintiff's application for appointment of legal counsel pursuant to 28 U.S.C. §1915(e). The plaintiff initiated this action pursuant to 42 U.S.C. §1983 alleging that the defendants violated his civil rights during his incarceration at the Federal Correctional Institute in Fairton, New Jersey.

After careful consideration of the plaintiff's submissions and other record documents and for the reasons noted below, the plaintiff's motion for appointment of counsel shall be **<u>GRANTED</u>**.

## II. Factual and Procedural History

Plaintiff Orlando Foreman is presently incarcerated at the Federal Correctional Institution in Fairton, New Jersey where he claims that his constitutional rights have been violated. (Plaintiff's Complaint, Preliminary Statement). Mr. Foreman is a T-5 paraplegic and has a history of suffering with decubitus closures to the heel and sacrum as well as urinary tract infections. (Plaintiff's Complaint, ¶3.2). Because of his condition, Mr. Foreman claims that he has a special need for a shower chair. (Plaintiff's Complaint, ¶3.3). In Mid-July 2000, Mr. Foreman contacted the Health Service Administrator and advised him of his need to receive a shower chair made for a paraplegic. Id. At this encounter, the plaintiff also informed the Health Service Administrator that he had been using his personal wheel chair in the shower and it had begun to rust. (Plaintiff's Complaint, ¶3.4). The administrator agreed to review his request and later ensured the plaintiff in September or October, 2000 that he would receive a wheelchair. (Plaintiff's Complaint, ¶3.5, 6).

Subsequently, the plaintiff proceeded to speak with his assigned unit counselor, Thomas Lombardi. (Plaintiff's Complaint, ¶3.7). During their discussion, the plaintiff claims that Mr. Lombardi informed him that his prison unit should provide him with a shower chair; however, the medical department is the one who supplies the unit with the chair. (Plaintiff's Complaint, ¶3.8). The plaintiff then claims that Mr. Lombardi made several calls to the medical department to send down a chair. (Plaintiff's Complaint, ¶3.9). In late October 2000, the medical department delivered a shower chair, however it was not the appropriate model for a paraplegic or triplegic. (Plaintiff's Complaint, ¶3.10, 11).

Approximately two years later in 2002, the plaintiff went to the Health Services Center to speak with the new Health Service Administrator, Defendant Ediberto Medina. (Plaintiff's Complaint, ¶3.13). The plaintiff repeated his previous request for an appropriate shower chair

and expressed that because of his inability to use the shower chair provided to him by the prison, he has continued to use his personal wheelchair in the shower which has since rusted and corroded in a plethora of areas. (Plaintiff's Complaint, ¶3.14). Defendant Medina agreed to follow up with his request. (Plaintiff's Complaint, ¶3.15). The plaintiff made numerous attempts to obtain a shower chair to meet his needs by contacting Defendant Medina, Defendant Ruben Morales, Defendant Jonathan C. Miner, and Defendant Karl Belfonti. (Plaintiff's Complaint, ¶3.16).

The plaintiff made similar requests with the acting Health Service Administrator, Bryant Walters, who then referred him back to Defendant Medina. (Plaintiff's Complaint, ¶3.19, 21). In mid-March, 2003 the plaintiff went to Defendant Medina and informed him of his continuing need and told him that his personal wheelchair was beginning to fail. (Plaintiff's Complaint, ¶3.22). Defendant Medina allegedly informed the plaintiff that the correct shower chairs were already installed in the housing unit. (Plaintiff's Complaint, ¶3.23).

After receiving this response, the plaintiff discontinued contact with Defendant Medina and sought assistance from Defendant Karl Belfonti, Associate Warden of Operations. (Plaintiff's Complaint, ¶3.25). The plaintiff again relayed his concerns and Defendant Belfonti agreed to look into the situation. (Plaintiff's Complaint, ¶3.27, 28). Approximately three days later, Defendant Belfonti called the plaintiff and informed him that he spoke with Defendant Medina who informed him that the correct chairs were in the units. (Plaintiff's Complaint, ¶3.29). The plaintiff voiced his dissatisfaction with this response and again request the appropriate equipment. (Plaintiff's Complaint, ¶3.30). Defendant Belfonti, allegedly, stated "there are rails in the showers and the showers meet the requirements in regards to accessibility set by the ADA." (Plaintiff's Complaint, ¶3.31). The plaintiff expressed that the shower area was not the problem but that the ability to use the shower for lack of having the appropriate

equipment was the issue. (Plaintiff's Complaint, ¶3.32).

In May 2004, the plaintiff sought assistance from Defendant Herbert Ingram, Safety Supervisor, reiterating the same requests and concerns that he had allegedly raised with other officials at the prison. (Plaintiff's Complaint, ¶3.33). According to the plaintiff, Defendant Ingram misunderstood the plaintiff's problem and believed the issue to be with the accessibility of the shower area and not with the ability to use the shower with the appropriate shower chair. (Plaintiff's Complaint, ¶3.34). This defendant also referred the plaintiff to the ADA guidelines. (Plaintiff's Complaint, ¶3.35).

Following this final act by the prison officials, the plaintiff allegedly went to his counselor Mr. Lombardi and obtained a form to initiate a formal inmate grievance procedure. (Plaintiff's Complaint, ¶3.43). The plaintiff believes that he took all measures necessary to exhaust the possibility of Administrative remedies before filing the instant action. (Plaintiff's Complaint, ¶3.47).

In addition to his grievance concerning the failure to provide a shower chair that meets the plaintiff's needs, the plaintiff also claims that the prison officials violated his constitutional rights by failing to provide him with his medically necessary orthopedic wear. Because of the previous damage to the plaintiff's heel, he was allowed at previous institutions to receive footwear from outside of the prison which would allow his feet to remain dry so as to prevent the decubiti from growing. (Plaintiff's Complaint, ¶4.1, 2, 5). The plaintiff received authorization to order shoes from an outside vendor as long as the shoes came through the proper institutional channels. (Plaintiff's Complaint, ¶4.6). The plaintiff never received his shoes because the mailroom, managed by Defendant Pat Kitka, refused to allow the plaintiff his medically approved sneakers. (Plaintiff's Complaint, ¶4.7). The plaintiff claims that after consulting Defendants Morales, Miner, and Belfonti, and Kitka concerning this matter, he was

still denied the opportunity to receive his medically approved shoes. (Plaintiff's Complaint, ¶4.8, 9). He was given shoes that were prescribed for diabetics, but was denied the appropriate shoes for his condition. (Plaintiff's Complaint, ¶4.11). This act, the plaintiff claims, caused him additional injury and violated his constitutional rights.

### III. Analysis

#### A. Appointment of Counsel Under 28 U.S.C. §1915(e).

The court may, pursuant to §1915(e), request an attorney to represent an indigent plaintiff in a civil action. Section 1915 provides in relevant part that:

> (1) [t]he court may request an attorney to represent any person unable to afford counsel. (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-(A) the allegation of poverty is untrue; or (B) the action or appeal - (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

§1915(e)(emphasis added). However, the appointment of counsel under §1915(e) is a privilege, not a statutory or constitutional right of the litigant. Purnell v. Lopez, 903 F. Supp. 863, 864 (E.D. Pa. 1995). Moreover, a court's power to appoint counsel pursuant to §1915(e) lies in the sole discretion of the court. Parham v. Johnson, 126 F.3d 454, 457 (3rd Cir. 1997); see also, Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993). Appointment of counsel may be made at any point during the litigation or by the court sua sponte. Tabron, 6 F.3d at 156. In exercising its discretion under §1915(e), the court is required to determine whether the claim has "some merit in fact and law" as a preliminary matter. Parham, 126 F.3d at 457.

If, as a preliminary matter, the court finds the action is not frivolous and has merit, then several factors are taken into consideration:

    (1)    plaintiff's ability to present his or her own case;
    (2)    the complexity of the legal issues;

>   (3)   the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
>   (4)   the amount a case is likely to turn on credibility determinations;
>   (5)   whether the case will require the testimony of expert witnesses, and;
>   (6)   whether the plaintiff can attain and afford counsel on his or her own behalf.

Tabron, 6 F.3d at 156-57.  This list is not exhaustive, nor is any one factor determinative.  Id. at 157.  See also Parham, 126 F.3d at 458; Hamilton v. Leavy, 117 F.3d 742, 749 (3d Cir. 1997); Hetzel v. Swartz, 917 F. Supp. 344, 346 (M.D. Pa. 1996); Robinson v. Horn, 921 F. Supp. 293, 295 (E.D. Pa. 1996); Jones v. Hinton, 153 F.R.D. 570, 571 (E.D. Pa. 1994).  These factors ensure that courts will only appoint counsel in non-frivolous matters.  Parham, 126 F.3d at 461.

Courts will only consider appointment of counsel where a plaintiff's case appears to have merit and most of the aforementioned factors are met.  Parham, 126 F.3d at 461.

   1.   The Plaintiff's Ability to Present His Own Case

The first factor for consideration is the plaintiff's ability to present his own case.  In making this determination, the court should consider the plaintiff's literacy, education, prior work experience, and prior litigation experience.  Tabron, 6 F.3d at 156.  A plaintiff's ability to understand English is also relevant to his ability to present his case.  Id.  Finally, if the plaintiff is incarcerated, the restraints placed upon him by virtue of his confinement should be considered in determining his ability to represent himself.  Id.  This includes the availability of typewriters, photocopiers, telephones and computers.  Id.

   2.   The Complexity of The Legal Issues

The second factor for consideration is the complexity of the legal issues presented.  In making this determination, the court is more inclined to appoint counsel when the legal issues are complex.  Id.  Where the law is not clear, it will best serve the ends of justice to have both

sides of a difficult legal issue presented by those trained in legal analysis. Id. However, comprehension alone does not equal the ability to translate understanding into presentation. Parham, 126 F.3d at 459. Although the ultimate issue may be comprehensible, the court must appreciate the complexity of the discovery involved. Id.

    3.    <u>The Degree to Which Factual Investigation Will Be Necessary and the Ability of the Plaintiff to Pursue Such Investigation</u>

The third factor for consideration is the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation. In making this determination, the court may consider the extent to which prisoners and others suffering confinement face problems in pursuing their claims. Tabron, 6 F.3d at 156. Further, the court should be aware of an indigent plaintiff's possible difficulties understanding complex discovery rules. Parham, 126 F.3d at 460. Thus, where the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted. Tabron, 6 F.3d at 156.

    4.    <u>The Amount a Case is Likely to Turn on Credibility Determinations</u>

The fourth factor for consideration is whether a case is likely to turn on credibility determinations. Though many cases turn on credibility determinations, the court should focus on whether the case is largely based on the word of one side against the word of the other side. Parham, 126 F.3d at 460.

    5.    <u>Whether the Case Will Require the Testimony of Expert Witnesses</u>

The fifth factor for consideration is the extent expert testimony may be required. Appointed counsel may be warranted where the case will require testimony from expert witnesses. Tabron, 6 F.3d at 156.

    6.    <u>Whether the Plaintiff Can Attain and Afford Counsel on His Own Behalf</u>

The sixth and final factor for consideration is plaintiff's financial ability to attain and afford counsel on his own behalf. Parham, 126 F.3d at 461.

**B.     The Merit of the Plaintiff's Claim**

While it is not this court's function in the context of a motion for appointment of counsel to reach the merits of the plaintiff's claim, Tabron requires that this court consider whether the plaintiff's claim has "some merit in fact and law" and is not "frivolous or malicious." Tabron, 6 F.3d at 155; 28 U.S.C. § 1915(d).

Based on the record before this court, the plaintiff's claims appear to have threshold merit in both fact and law. The allegations of the plaintiff, if established at trial, would support his constitutional claim that the prison officials in question deliberately and intentionally denied him proper access to medical treatment, namely a proper shower chair for his condition and proper shoes. Deliberate indifference occurs where there is an unnecessary infliction of pain. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The indifference can be manifested by prison doctors in response to prison needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. Id. at 104-105.

According to Third Circuit precedent, an inmate alleging deliberate indifference to medical needs or in relation to the prisoner's conditions of confinement must demonstrate: 1) that the defendants were deliberately indifferent to his medical needs; and 2) that those needs were serious. Rouse v. Plantier, 182 F.3d 192, 197 (3rd Cir. 1999).

In the case presently before the court, the plaintiff's claim regarding medical treatment, if established at trial, would satisfy the deliberate indifference test. The plaintiff asserts that the defendants ignored his pleas to receive an appropriate shower chair and continued to allow him to use his personal rusted and failing wheel chair in the prison showers. Despite his numerous

attempts to have someone address his requests the plaintiff has had to suffer for years without the proper means to bathe himself. Additionally, the defendants have constantly denied him access to what one might regard as a minuscule request, shoes. The plaintiff has not demanded that the prison finance the cost of the shoes; he merely requests that the mail room deliver what doctors have deemed to be a medical necessity. Thus, Foreman's claim has threshold merit under Tabron.

### C. Litigation Management Factors

This court must consider the litigation management factors to determine whether this claim warrants appointment of counsel. See Parham, 126 F.3d at 457. That is, this court must consider whether the plaintiff is incapable of presenting his own case. In making this determination, as discussed supra, this court must take into consideration the complexity of the case, related matters of proof, presentation of testimony, and the difficulties of discovery, including those related to the plaintiff's incarceration.

The plaintiff has argued that he will be unable to present his own case due to his lack of legal experience. Although Plaintiff Foreman has demonstrated that he is able to articulate the factual background of his case – his pleadings are well written and articulate and clearly indicate the legal issues involved in his case – the court still doubts the plaintiffs ability to effectively defend this case against all parties involved beyond the initial stages of merely submitting papers to the court.

If the facts of the case are as the plaintiff has presented, then there are numerous issues that need to be resolved, especially with regard to the actual contribution of each of the defendants. There are a number of parties involved and the facts of the plaintiff's case indicate that a medical expert may be required which would add an additional level of complexity to the case. Also, because there are multiple parties involved in the plaintiff's case, extensive

discovery may be required. In this case, although Plaintiff Foreman has filed well written documents, the issues in this case may require the production of a large number of documents or witnesses. The possible necessity of expert witnesses as well as the complex medical issues involved lead this court to conclude that pro bono representation is warranted.

## IV. Conclusion

Accordingly, for the reasons set forth above, the plaintiff's motion for the appointment of counsel is hereby **GRANTED**.

The attached order shall be entered.

Very truly yours,

/s Joel B. Rosen
JOEL B. ROSEN
United States Magistrate Judge


cc:   Honorable Robert B. Kugler
      Barbara Fisher - Arthur, Courtroom Deputy

Doc. No. 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE
HONORABLE JOEL B. ROSEN

| | | |
|---|---|---|
| ORLANDO C. FOREMAN, Pro Se, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 04-5413(RBK) |
| | : | |
| BUREAU OF PRISONS, et. al. | : | |
| | : | |
| Defendants. | : | |

**ORDER**

This matter having come before the court upon the motion of Orlando C. Foreman, Plaintiff pro se, for appointment of counsel pursuant to 28 U.S.C. §1915(e); and the court having considered the submissions of the plaintiff; and the court having further considered the criteria and analysis set forth in Tabron v.. Grace, 6 F.3d 147 (3d Cir. 1993) and Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997); and for the reasons noted in the letter opinion entered on this date;

**IT IS** this 13th day of May 2005 hereby

**ORDERED** that the plaintiff's motion for appointment of counsel pursuant to 28 U.S.C. §1915(e) shall be **GRANTED**; and

The Clerk of Court is hereby directed to select an attorney for appointment from the Civil Pro Bono Panel, in accordance with the procedures set forth in Appendix H, Local Rules for the United States District Court for the District of New Jersey.

/s Joel B. Rosen
JOEL B. ROSEN
United States Magistrate Judge