(Not for publication)                                    Docket Entry No. 12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
ORLANDO C. FOREMAN,                      :
                                        :
                    Plaintiff,           :        Civil No. 04-5413 (RBK)
                                        :
        v.                               :
                                        :
BUREAU OF PRISONS, HARLEY G.             :
LAPPIN, JONATHAN C. MINER, KARL          :
BELEFONTI, RUBEN B. MORALES,             :
EDIBERTO MEDINA, HERBERT                 :
INGRAM, TONY JONES, PAT KITKA,           :
and FEDERAL CORRECTIONAL                 :
INSTITUTION FAIRTON, N.J.,               :
                                        :
                                        :
                    Defendants.          :
_____:


## OPINION

**KUGLER**, United States District Judge**:**

        This matter comes before the Court upon motion by defendants for an order dismissing

the plaintiff's complaint for failure to state a claim, and on grounds of qualified immunity.

Because the defendants' motion relies upon matters which are outside the pleadings, the motion

to dismiss will be treated as a motion for summary judgment. See Fed. R. Civ. P. 12(b)(6).  For

the reasons discussed below, the defendants' motion will be granted.

## I.  BACKGROUND

        Plaintiff Orlando Foreman is currently serving a 235 month sentence for a conviction

under 18 U.S.C. §922(g)(1), possession of a firearm by a prohibited person. (Def. Mem. at 2.)
On or about July 5, 2000, Foreman was transferred from the United States Penitentiary in
Allenwood, Pennsylvania to the Federal Correctional Institution in Fairton, New Jersey ("FCI
Fairton"), where he is presently housed. (Pl. Supp. Opp. at 6.)  Foreman's projected release date
is January 7, 2013. (Declaration of R. Truman, ¶ 4, attached to Def. Mem.)

        During the course of his arrest on December 18, 1995, Foreman received a gunshot
wound which permanently rendered him a T-5 paraplegic. (Pl. Supp. Opp. at 4-5; Def. Mem. at
2.)  As a result, Foreman is confined to a wheelchair and paralyzed from the waist down.  (Pl.
Aff. ¶ 2, attached as Exhibit B to Pl. Supp. Opp.)  In addition, due to his inability to move his
legs or feet, Foreman developed sacral decubitis (bed sores) over both of his heels. (See Transfer
Summary at 1, attached as Exhibit 2 to Def. Mem.)  During his incarceration prior to his transfer
to FCI Fairton, Foreman had these areas grafted with a "flap closure from the sacrum." (See
Transfer Summary at 1, attached as Exhibit 2 to Def. Mem.)

        Plaintiff complains that after he transferred to FCI Fairton, he made requests for certain
accommodations which were allegedly ignored by the defendants.  Specifically, Foreman alleges
that it was unlawful for the defendants (1) to fail to provide him with a shower chair designed
specifically for a T-5 paraplegic, and (2) to fail to provide him with proper "medical shoes" given
the problems he had with the skin on his feet. (Pl. Supp. Opp. at 10-14.)

### A.  The Shower Chair

        Sometime in the Fall of 2000, Foreman verbally requested from Mr. Jimenez, the former
Hospital Administrator at FCI Fairton, and Mr. Lombardi, the Correctional Unit Counselor at
FCI Fairton, a shower chair designed for use by T-5 paraplegics. (See Compl. ¶¶ 3.5-3.8; Pl. Aff.
¶ 4, attached as Exhibit B to Pl. Supp. Opp.)  In October 2000, the defendants provided Foreman

with a shower chair for his use.  (See Compl. ¶¶ 3.10-3.12.)

Foreman alleges that the shower chair provided was inadequate because it was not designed for use by someone paralyzed from the waist down.  Foreman argues that a suitable shower chair for someone in his condition is a roll-in chair with a padded sitting surface, two arm supports to enable him to balance and shift his weight, and a hole in the seat to allow for proper drainage and hygiene. (See Pl. Supp. Opp. at 6; Picture of Rehab Shower Chair, attached as Exhibit K to Pl. Supp. Opp.; Letter from Linda Lantieri, dated Feb. 15, 2005, attached as Exhibit L to Pl. Supp. Opp.)

Because Foreman was afraid of falling out of the shower chair provided by the defendants, he often used his personal wheelchair while showering, even though he knew his wheelchair was not designed to be used as a shower chair. (See Pl. Aff. ¶ 8, attached as Exhibit B to Pl. Supp. Opp.; Letter from Sunrise Medical, attached as Exhibit C to Pl. Supp. Opp. )

From 2002 onward, Foreman alleges he had verbal conversations with defendants Ediberto Medina, Karl Belefonti, Herbert Ingram, Ruben Morales, and Jonathan C. Miner wherein he expressed concern for his safety regarding use of the shower chair. (Pl. Supp. Opp. at 7-9; Pl. Aff. ¶¶ 7-13.)  Foreman contends that they repeatedly told him that he was being provided with the proper shower chair and they denied his requests for a better one. (See Pl. Supp. Opp. at 7-9; Pl. Aff. ¶¶ 7-13.)

On March 21, 2004, Foreman filed a "BP-8 Informal Resolution Form" requesting a different shower chair.  (See BP-8 Form, attached as Exhibit C to Pl. Supp. Opp.)  On March 30, 2004, Mr. Lombardi responded to plaintiff's request by providing Foreman with a shower chair with no lateral supports. (See Pl. Supp. Opp. at 10; BP-8 Form, attached as Exhibit C to Pl. Supp. Opp.)

On or about March 31, 2004, Foreman then proceeded with the next step in the administrative remedy process by filing a "BP-9 Administrative Remedy" request with the Warden, wherein he asked for a wheeled shower chair designed for a paraplegic.  (See BP-9 Form, attached as Exhibit D to Pl. Supp. Opp. and as Exhibit 15 to Def. Mem.)  On April 15, 2004, the Warden, Jonathan C. Miner, denied Foreman's request stating that he was "using the proper shower chair." (See Response to BP-9, attached as Exhibit 15 to Def. Mem.)

Shortly thereafter, on or about April 19, 2004, Foreman appealed the Warden's denial by filing a "BP-10 Regional Administrative Remedy" with the Regional Director, claiming that the plastic shower chair provided by Health Services was inadequate. (See BP-10 Form, attached as Exhibit E to Pl. Supp. Opp. and as Exhibit 16 to Def. Mem.)  On May 26, 2004, Foreman's appeal was denied.  The Regional Director determined that the current chair met his needs because the shower itself had railings and other paraplegic inmates had allegedly used the same chair. (See BP-10 Response, attached as Exhibit E to Pl. Supp. Opp. and as Exhibit 16 to Def. Mem.)

On June 18, 2004, Foreman took his final step in the administrative remedy process by appealing the Regional Director's denial to the National Inmate Appeals Central Office. (See BP-11 Form, attached as Exhibit F to Pl. Supp. Opp. and as Exhibit 17 to Def. Mem.)  On September 30, 2004, the National Inmate Appeals Administrator responded.  He wrote that a discussion with the FCI Fairton medical staff revealed that "the staff have determined that a different style of chair is more appropriate for your needs, and are in the process of obtaining a chair for you.  The new chair will provide more support to meet your mobility limitations." (BP-11 Response ¶ 2, attached as Exhibit F to Pl. Supp. Opp. and as Exhibit 17 to Def. Mem.)  At the end of the response, however, the Administrator noted that "this response is provided for informational

purposes only." (BP-11 Response ¶3, attached as Exhibit F to Pl. Supp. Opp. and as Exhibit 17 to Def. Mem.)

Despite the response from the National Inmate Appeals Administration, the defendants did not provide Foreman with a new or different shower chair. (See Pl. Aff. ¶18.)  On December 20, 2004, a correctional officer from Foreman's housing unit called Health Services to report that Foreman had fallen in the shower and sustained minor scratches.  (See Admin. Note in Medical Records attached as Exhibit 4 to Def. Mem.; Pl. Aff. ¶ 17, attached as Exhibit B to Pl. Supp. Opp.)

**B.  The Shoes**

Because of Foreman's problems with his feet, including blisters, soft tissue damage, and decubiti on his heels, Foreman sought authorization to obtain medical shoes from sources outside the prison. (See Inmate Request dated Aug. 3, 2000, attached as Exhibit 5 to Def. Mem.)  The appropriate authorization form was provided to him.  (See Notes on Inmate Request, dated Aug. 3, 2000, attached as Exhibit 5 to Def. Mem.) Several months later, Foreman was also authorized to buy high top sneakers from the commissary. (See Medical Report, attached as Exhibit 7 to Def. Mem.)

In the three years that followed, Foreman was seen for various medical problems, but only a few reported foot problems.  On July 11, 2001, during a routine clinical visit, plaintiff reported that the first toe on his left foot was painful because of pressure from his shoe.  After examination of the foot, the doctor noted that there was a light scar over the left first toe but no tenderness, redness, or swelling. (See Record of Medical Care, dated 7/11/01, attached as Exhibit 8 to Def. Mem.)  On December 13, 2002, Foreman was again see for a routine examination.  The physician noted that Foreman's shoes did not fit well and he had blister on his heel. (See

Physician Note dated 12/13/02, attached as Exhibit 9 to Def. Mem.)  The physician remarked that the defendant's family was willing to bring him sneakers that should keep his feet warm without pressure. (Physician Note, dated 12/13/02, attached as Exhibit 9 to Def. Mem.)  The physician's main concern was that Foreman obtain properly fitting shoes. (Physician Note, dated 12/13/02, attached as Exhibit 9 to Def. Mem.)  On January 2, 2003 plaintiff was again provided with a form for authorization to obtain shoes sent from his family. (See Inmate Request Form, attached as Exhibit 10 to Def. Mem.).  On March 26, 2003, plaintiff was seen during the Chronic Care Clinic for his hepatitis C, and at that time his extremities were normal for his condition, and the plaintiff again requested and received permission to purchase high top sneakers from the commissary. (See Medical Report, dated 3/26/04, attached as Exhibit 11 to Def. Mem.)  Months later, on October 17, 2003, plaintiff was treated for a recurrent urinary tract infection and also complained of a small, round wound over his left heel, which was treated with oral medication and antibiotic ointment.  (See Medical Report dated 10/17/03, attached as Exhibit 12 to Def. Mem.)  Finally, on February 12, 2004, Foreman again received treatment for his hepatitis C in the Chronic Care Clinic, but he did not report any problems with his left heel.  (See Medical Report, dated 2/12/04, attached as Exhibit 13 to Def. Mem.)

On or about March 19, 2004, Foreman submitted an informal administrative form to his counselor complaining that he had previously been authorized to receive shoes from an outside source, but that he was subsequently told he could not receive them.  (See Informal Resolution Form, attached as Exhibit D-2 to Pl. Opp.)  The associate warden, J. Henry, responded to Foreman's complaint on March 29, 2004. (See Disposition Letter from J. Henry, dated 3/29/04, attached as Exhibit D to Pl. Opp.)  He explained that the staff had re-evaluated the procedures used to have authorized packages enter FCI Fairton.  One of these new procedures involved the

process by which inmates could receive medically approved shoes.  The Warden enclosed a copy

of the new procedures, which were outlined in a memo to the inmate population dated March 23,

2004. (See Disposition Letter from J. Henry, dated 3/29/04, attached as Exhibit D to Pl. Opp.)

Under this new procedure, inmates who required special shoes would be evaluated by Health

Services, and if necessary, Health Services would order the special shoes required to meet the

inmate's medical needs. (See Disposition Letter from J. Henry, dated 3/29/04, attached as Exhibit

D to Pl. Opp.) Once the shoes arrived, the inmate would be placed on "call out" for an

assessment and fitting.  In his response to Foreman's complaint, the associate warden assured

Foreman that "FCI Fairton will obtain appropriate shoes that meets [sic] your medical needs of

your pre-existing condition." (See Disposition Letter from J. Henry, dated 3/29/04, attached as

Exhibit D to Pl. Opp.)

      Because FCI Fairton had instituted a new procedure for obtaining special shoes, Foreman

was unable to receive the shoes that his mother allegedly had sent him pursuant to the old

procedure.  By the time Foreman learned that the new FCI Fairton procedure would prevent him

from receiving shoes from his mother, the time frame for Foreman to pursue the appropriate

administrative remedies had passed. (Pl. Supp. Opp. at 13-14.)  Thereafter, on June 29, 2004,

Foreman received high top sneakers through the commissary. (See Email from J. Tilghman,

dated 6/29/04, attached as Exhibit 19 to Def. Mem.)  He did not receive any other, protective

medical footwear through Health Services.

## II. STANDARD OF REVIEW

      In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

Court must accept the plaintiff's allegations along with all reasonable inferences that may be

drawn from them as true.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) (citing Piecknick v.

Commonwealth of Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994)).  The Court may dismiss

the Complaint only if the plaintiff can prove no set of facts that would entitle them to

relief.  Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and

Research Foundation, 334 F.3d 365, 374 (3d Cir. 2003) (citation omitted).

       However, where a party submits a motion to dismiss that relies upon matters outside the

pleadings, the Court may treat that motion as one for summary judgment as long as both parties

have been given a reasonable opportunity to present relevant materials. Fed. R. Civ. P. 12(c); see

Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir. 2000).   Here, the defendants

submitted over 19 exhibits along with a sworn declaration attached to their original motion

papers.  In response, the plaintiff attached numerous exhibits to his opposition papers and

actually referred to the defendants' motion as a "motion to dismiss, or in the alternative for

summary judgment." (See Pl. Supp. Opp. at 38.)  The plaintiff further noted that because the

defendants submitted a sworn declaration with several other exhibits, their motion became "in

the alternative, a Motion for Summary Judgment under L. Civ. R. 56.1." (Pl. Supp. Opp. at 1

n.2.)  Therefore, it appears that both parties had notice that the motion could be treated as one for

summary judgment, and both parties had the opportunity to submit material to support their

arguments. See Carver v. Plyer, 115 Fed. Appx. 532, 536-37 (3d Cir. 2004) (finding that court

did not err in deciding a 12(b)(6) motion as a motion for summary judgment where (1) the parties

had notice that the motion might be treated as such, and (2) the motion was not decided until five

months after it was filed, thus giving the parties ample opportunity to request further discovery if

they wanted it.)

       In any event, summary judgment is only appropriate where the Court is satisfied that

"there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330

(1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury

could find for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment. <u>Celotex</u>, 477 U.S. at 330. The moving party may satisfy this burden by

either (1) submitting affirmative evidence that negates an essential element of the nonmoving

party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is

insufficient to establish an essential element of the nonmoving party's case. <u>Id.</u> at 331. If the

moving party has not fully discharged its initial burden, its motion for summary judgment must

be denied. <u>Id.</u> at 332. If the moving party satisfies its initial burden, the nonmoving party "must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

The defendants present six arguments as to why the claims in plaintiff's complaint must

fail. First, the defendants argue that the individual defendants are entitled to qualified immunity

on the plaintiff's <u>Bivens</u>[1] action against them because Foreman has not shown that the individual

defendants violated a clearly established constitutional right. Second, the defendants argue that

plaintiff's deliberate indifference claim must fail because a mere disagreement over the course of

treatment does not rise to the level of deliberate indifference to a serious medical need. Third,

the defendants assert that the plaintiff's deliberate indifference claim regarding his request for

special shoes is particularly improper because the plaintiff failed to exhaust his administrative

remedies prior to filing suit. Fourth, the defendants contend that the BOP and FCI Fairton are

---

[1] In <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), the Supreme
Court established that federal officials could be sued in their individual capacities for money
damages on the grounds of certain constitutional violations.

improper defendants in this case because an action for damages based upon <u>Bivens</u> cannot be brought against the United States or an agency thereof.  Fifth, the defendants argue that the <u>Bivens</u> action against defendants Lappin, Belefonti, Miner and Ingram must fail because the complaint does not allege that those defendants took any specific actions in furtherance of the alleged Eighth Amendment violation.  Sixth, the defendants argue that the plaintiff's claim under the Americans with Disabilities Act ("ADA") must fail because the ADA does not apply to federal agencies or employees.

The Court will first address qualified immunity and plaintiff's <u>Bivens</u> action for an alleged violation of the Eighth Amendment, and then will turn to plaintiff's claims under the ADA.

### A.  Qualified Immunity

Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).   In the context of a <u>Bivens</u> action against prison officials for civil damages, the entitlement to qualified immunity depends upon the legal question of whether the alleged misconduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>see</u> <u>United States v. Stanley</u>, 483 U.S. 669, 694 n.12 (1987) (recognizing that qualified immunity applies to prison officials); <u>see also</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986) (noting that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); <u>Mitchell</u>, 472 U.S. at 528 (noting that officials are immune from suit unless "the law clearly proscribed" their actions).

Because entitlement to qualified immunity is an immunity from suit rather than a mere defense to liability, the entitlement is effectively lost if a case is erroneously permitted to go to

trial. Siegart v. Gilley, 500 U.S. 226, 233 (1991) (citing Mitchell, 472 U.S. at 526).  As a result, courts have repeatedly stressed the importance of resolving questions of qualified immunity at the earliest possible stage of the litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted).

To determine whether an individual defendant is entitled to qualified immunity, the Court must conduct a two-step inquiry. Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Court must first determine whether the alleged facts, taken in the light most favorable to the party asserting injury, demonstrate that the official's conduct violated a constitutional right.  Id.; Atkinson v. Taylor, 316 F.3d 257, 261 (3d Cir. 2003).  If no constitutional right would be violated if the alleged facts were established, the inquiry is at an end and the defendant is entitled to immunity. Saucier, 533 U.S. at 201; Atkinson, 316 F.3d at 261.  However, if a constitutional violation could be made out on a favorable view of the parties' submissions, the Court must then determine whether the right violated was clearly established in light of the specific context of the case. Saucier, 533 U.S. at 201; Atkinson, 316 F.3d at 261.  In other words, the relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that a defendant's conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 201 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)); see Anderson v. Creighton, 483 U.S. 635, 640-41 (1987) (requiring that the right at issue in qualified immunity analysis must be clearly established with an appropriate level of specificity).

In the present case, the defendants are alleged to have violated the plaintiff's Eighth Amendment rights against cruel and unusual punishment by failing to provide him with medically appropriate shoes and a shower chair specifically designed for a paraplegic.  To determine whether this conduct violates a constitutional right under the first prong of the

qualified immunity analysis, the Court must rely upon the relevant standards for determining an Eighth Amendment violation.

### 1. Eighth Amendment and Deliberate Indifference

The Supreme Court has held that the government has an obligation to provide medical treatment to prisoners and that "deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Such deliberate indifference may be manifest in the denial of, delay of, or interference with needed medical care. Id. at 104-05; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). However, mere negligence does not rise to the level of deliberate indifference. Estelle, 429 U.S. at 106. As a result, decisions by prison medical staff involving the exercise of professional judgment do not violate the Eighth Amendment, even though they may be grounds for professional malpractice. Id. at 107; Farmer v. Brennan, 511 U.S. 825, 835 (1994). Similarly, a mere disagreement as to proper medical treatment is not sufficient to establish a constitutional violation. Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

To demonstrate a prima facie case of deliberate indifference, the plaintiff must establish both an objective and a subjective factor. First, the plaintiff must show that the alleged deprivation was sufficiently serious or that the result of that deprivation was sufficiently serious. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second, the plaintiff must make a showing that the defendants acted with a sufficiently culpable state of mind. Id. That is, the defendants must have knowingly disregarded an excessive risk to inmate safety, such that the defendants were not only aware of facts from which the inference could be drawn that a substantial risk of harm existed, but they must have also actually drawn that inference. Farmer, 511 U.S. at 837.

2.  Are the individual defendants entitled to qualified immunity on plaintiff's Eighth Amendment claim relating to his shower chair?

Taking all facts in a light most favorable to plaintiff, it is not clear that the allegations demonstrate a violation of the Eighth Amendment.  Although the plaintiff's paralysis creates a serious condition requiring appropriate medical care, it is not certain that the alleged deprivation (i.e. failure to provide a specific kind of shower chair) rises to the level of an Eighth Amendment violation.  See Staples v. Virginia Dept. of Corrections, 904 F. Supp. 487, 491-92 (E.D. Va. 1995) (noting that there was no legal authority to support a paraplegic inmate's assertion that he had a constitutional right to particular shower chair or to whirlpool access).  The facts of the present case establish that the defendants provided Foreman with a custom fit wheelchair. (See Def. Mem. at 1.)  They also demonstrate that upon request, the defendant was provided with a shower chair.  Although the chair did not have leg supports or a commode style opening, the shower area was handicap-accessible, had chair-level, lateral railings and a padded shower seat situated between those railings. (See Medina Aff. and attached photograph, attached to Def. Reply Mem.)   Indeed, the plaintiff cites to no authority which suggests that providing a paraplegic with those shower accommodations rises to the level of deliberate indifference, nor can the court find any such authority.

In fact, the case law relating to similar situations tends to support the finding of qualified immunity in similar contexts. See Shockley v. Jones, 823 F.2d 1068 (7th Cir. 1987) (no constitutional violation where prison officials initially failed to provide wheelchair-bound inmate with any shower chair even though such failure caused inmate to fall and suffer injuries which required skin surgery); Thompson v. Lampert, No. 02-135, 2004 WL 1673102 (D. Ore. 2004) (no constitutional violation where wheelchair-bound inmate fell due to a defective shower bench and was thereafter unable to shower for a ten day period because he was allegedly not provided with

a substitute shower chair); <u>Staples</u>, 904 F. Supp. 487 (no constitutional violation where

paraplegic inmate complained he was not provided with an appropriate shower chair and did not

demonstrate any serious harm as a result). <u>But see</u> <u>Schmidt v. Odell</u>, 64 F. Supp. 2d 1014 (D.

Kan. 1999) (finding unnecessary or wanton infliction of pain where a double amputee was denied

any shower chair for six months, which led him to contract a rash from laying on the shower

floor and also caused a significant amount of pain and a cellulitis infection due to his attempts to

stand on his amputated legs in the shower). The present case is unlike <u>Schmidt</u> in that the

plaintiff here was provided with a shower chair, railings, a padded bench, and a handicap-

accessible stall, whereas in <u>Schmidt</u>, the inmate was not provided with any such

accommodations. <u>See</u> <u>Schmidt</u>, 64 F. Supp. 2d at 1031. Based on the alleged facts and the

available case law dealing with similar factual situations, the Court finds that the alleged

deprivation does not rise to the level of am Eighth Amendment violation.

 Nevertheless, even assuming that a constitutional violation is made out on these facts,

reasonable officials could disagree as to what constitutes the requisite level of care in the

circumstances these defendants confronted. <u>See</u> <u>Malley</u>, 475 U.S. at 341 (noting that immunity

should be recognized if reasonable officials could disagree on the legality of the conduct at

issue). In other words, the second prong of the qualified immunity analysis requires the Court to

ask whether the officials acted reasonably under settled law in the particular circumstances. <u>See</u>

<u>Hunter</u>, 502 U.S. at 228. Settled law provides that prison officials may not subject prisoners to

unnecessary or wanton infliction of pain, and further, that such inmates are entitled to basic

sanitation. <u>See</u> <u>Estelle</u>, 429 U.S. at 104 (unnecessary and wanton infliction of pain); <u>Union</u>

<u>County Jail Inmates v. Di Buono</u>, 713 F.2d 984, 998 n.19 (3d Cir. 1983) (citations omitted)

(sanitation). As the cases above-cited cases suggest, there is no clearly settled law standing for

the proposition that a paraplegic inmate is entitled to the most convenient shower chair of his choice, or even one that has a commode-style opening and leg supports as opposed to lateral wall railings.  Here, the defendant was given a shower chair, access to routine showers, access to a handicap-equipped stall with lateral railings and a padded bench.  On these facts, a reasonable official could believe that an inmate could balance himself on the chair or padded bench using the railings for support. (See Medina Affidavit and photograph, attached to Def. Reply Mem.; see also Letter from Linda Lantieri, dated Feb. 15, 2005, attached as Exhibit L to Pl. Supp. Opp., noting that a suitable alternative to the shower chair requested by plaintiff would be a padded shower bench).  At the very least, the law is not settled that such conduct would be unreasonable, inflict wanton or  unnecessary pain, or effectively deny the inmate basic personal hygiene. Furthermore, at the time plaintiff made his requests to the individual defendants, there was no request from any of the plaintiff's doctors requesting a particular kind of shower chair for his use or stating that the provided shower accommodations were inadequate.  Cf. Schmidt, 64 F. Supp. 2d at 1031 (constitutional violation where doctor specifically requested that the defendants provide the inmate a shower chair or wheelchair accessible shower, yet the defendants still failed to provide one).

Under these circumstances, the Court finds that it would not be clear to a reasonable official that failing to provide the specific kind of chair the plaintiff requested was unlawful. Although this Court empathizes with the plaintiff's concerns, and as a practical matter would like to see the plaintiff obtain the shower chair of his choice, the plaintiff has not shown that the individual defendants are not entitled to qualified immunity.  Because the defendants' shower accommodations did not violate clearly established constitutional rights of which a reasonable official would have known, the individual defendants are entitled to qualified immunity on

plaintiff's Eighth Amendment claim pertaining to his shower chair.

   3. <u>Are the individual defendants entitled to qualified immunity on plaintiff's</u>
      <u>Eighth Amendment claim relating to his special shoes?</u>

   Similarly, the individual defendants are entitled to qualified immunity on plaintiff's

Eighth Amendment claim relating to his desire for special, medical shoes.  The facts do not

demonstrate a constitutional violation because a reasonable jury could not find that the

defendants were deliberately indifferent to the plaintiff's podiatric problems.

   The relevant facts regarding the defendants' response to Foreman's foot problems may be

summarized as follows.  In 2002, one of the plaintiff's treating physicians expressed concern that

Foreman's shoes may not have adequately fit him.  He noted the importance for Foreman to have

"protective footwear on him that keeps his foot warm and there is no pressure." (<u>See</u> Dr. Silver's

Note, attached as Exhibit 9 to Def. Mem.)  Furthermore, he added that it was irrelevant what

form the shoe took as long as "it fits him." (<u>See</u> Dr. Silver's Note, attached as Exhibit 9 to Def.

Mem.)  Thereafter, the defendant was given an authorization form to receive shoes from an

outside source, and he also received authorization to buy new shoes at the prison commissary.

(<u>See</u> Inmate Request dated Aug. 3, 2000, attached as Exhibit 5 to Def. Mem.; Inmate Request

Form, attached as Exhibit 10 to Def. Mem.)  Although plaintiff did not receive the shoes his

mother subsequently sent him because of an interim change in prison policy, he did receive (1) a

new pair of high top sneakers from the commissary and (2) a letter from the assistant warden that

the prison would make sure he had medically appropriate footwear. (<u>See</u> Disposition Letter from

J. Henry, dated 3/29/04, attached as Exhibit D to Pl. Opp.; Email from J. Tilghman, dated

6/29/04, attached as Exhibit 19 to Def. Mem.)  A month after Foreman received these new shoes

from the commissary, he had a doctor's appointment wherein there was no indication of any

problems with Foreman's feet. (<u>See</u> Record of Medical Care, attached as Exhibit 14 to Def.

Mem.)  Moreover, throughout the plaintiff's incarceration at FCI Fairton, the prison staff has

been responsive to plaintiff's podiatric complaints by providing multiple doctor consultations,

medication, and topical treatments. (See Def. Mem. at 3-5.)

      Based on these facts, Foreman's deliberate indifference claim must fail because (1) the

prisoner cannot make a claim for medical indifference unless the alleged denial at issue caused

harm and (2) a mere disagreement over the proper treatment does not constitute a constitutional

claim. Monmouth County, 834 F.2d at 346; Davidson v. Scully, 155 F. Supp. 2d 77, 84

(S.D.N.Y. 2001); Munoz v. Marshall, No. 94-1839, 1994 WL 508633, at *3 (N.D. Cal. Sept. 8,

1994) (citation omitted).  Here, although the plaintiff did not receive the particular shoes he

wanted from his mother, he did receive new shoes from the commissary, and there is no

indication that he has had serious problems with his feet due to those new shoes. Cf. Saunders v.

Horn, 959 F. Sup. 689, 694 (E.D. Pa. 1996) (finding deliberate indifference where prison staff

failed to provide any appropriate footwear to inmate and instead chose to ignore his podiatric

needs).  In addition, just because the plaintiff wants a particular kind of medical shoe does not

mean that the provision of different shoes constitutes deliberate indifference.  Davidson, 155 F.

Supp. 2d at 84 (finding no constitutional violation where inmate received treatment for podiatric

problems, but complained that he wanted a different course of treatment including different

orthopedic shoes than the ones provided by the prison); Munoz,1994 WL 508633, at *2 (failure

to permit inmates to wear the most comfortable or desirable apparel does not rise to level of

constitutional violation).  Consequently, the plaintiff here does not allege a sustainable deliberate

indifference claim because the defendants were responsive to plaintiff's foot condition, and

plaintiff has not shown that the footwear provided to him was so deficient as to cause serious

harm.[2]

Because there is no constitutional violation based upon the alleged facts, the defendants are entitled to qualified immunity on plaintiff's Eighth Amendment claim relating to his desire for different medical shoes.  That said, the Court trusts that the defendants will adhere to the new procedures outlined in the warden's memo dated March 23, 2004 and will have Health Services acquire and fit the defendant for different shoes should it become medically necessary.

Because the Court finds, for the reasons outlined above, that the plaintiff has not established a constitutional violation based on the denial of the special shower chair and/or the special shoes, the Court will similarly deny the plaintiff's claims for injunctive relief based upon those same, alleged Eighth Amendment violations.  In addition, the Court need not address the defendant's arguments regarding (1) the plaintiff's failure to exhaust administrative remedies regarding his request for certain medical shoes or (2) the defendants' arguments regarding the participation of certain defendants in the alleged Eighth Amendment violation, because those constitutional claims have been otherwise disposed of on the merits.[3]  Therefore, the Court will

---

[2] Plaintiff argues that the lack of protective footwear could lead to decubiti on plaintiff's feet which would be painful and might require surgery.  However, there is no evidence that the defendant has developed any of these decubiti due to the defendants' choice to provide new shoes through the commissary as opposed to allowing the defendant to receive new shoes from this mother.

[3]In his Complaint, the Plaintiff makes allegations regarding a conspiracy among the defendants to violate his rights.  Because the Court finds that there is no unlawful act in this case, nor has the Plaintiff alleged facts to establish an agreement among the defendants to perform any unlawful act, the conspiracy allegations in the Complaint are without merit.  See U.S. v. Jimenez Recio, 537 U.S. 270, 274 (2003) (noting that the essence of conspiracy is an agreement to commit an unlawful act).  Similarly, the Plaintiff makes allegations of negligence in his pro se Opposition to Plaintiff's Motion to Dismiss; however, the Plaintiff  has not pled in his Complaint the six requirements necessary to state a tort claim against the United States pursuant to the Federal Tort Claims Act.  See 28 U.S.C. §1346(b); Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995).  Because Plaintiff has not pled a proper negligence claim anywhere in his Complaint, the Plaintiff's negligence arguments in his pro se Opposition are similarly without

turn to the validity of the claims against the institutional defendants and the validity of the

plaintiff's claims under the ADA.

### B.  Bureau of Prisons and FCI Fairton as Defendants in <u>Bivens</u> Action

Sovereign immunity bars lawsuits against the United States and its agencies, unless

Congress has specifically waived that immunity. <u>United States v. Mitchell</u>, 445 U.S. 535, 538

(1980); <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976).  The United States has not waived it

sovereign immunity for suits alleging constitutional torts. <u>Federal Deposit Ins. Corp. v. Meyer</u>,

510 U.S. 471, 477-78 (1994).  Therefore, a <u>Bivens</u> action for civil damages cannot be brought

against the United States or its agencies or instrumentalities. <u>Id.</u> at 485-86; <u>Johnstone v. United

States</u>, 980 F. Supp. 148, 151 (E.D. Pa. 1997) (finding that sovereign immunity precludes a

<u>Bivens</u> action for damages against the Bureau of Prisons); <u>Martinez v. Williams</u>, No. 89-5641,

1989 WL 129849, at *1 (E.D. Pa. Oct. 23, 1989) (finding that sovereign immunity precludes a

<u>Bivens</u> action for damages against a Federal Correctional Institution).  As a result, the plaintiff's

<u>Bivens</u> claims against the Bureau of Prisons and FCI Fairton for any alleged Eighth Amendment

violation are improper and must be denied.

### C.  Plaintiff's ADA Claims

Although the plaintiff attempts to plead claims under Title II of the ADA against the

defendants, the ADA does not apply to the federal government, its agencies or employees.  <u>See

United States v. Wishart</u>, 146 Fed. Appx. 171, 173 (9th Cir. 2005) ("By definition, the ADA does

not apply to the federal government."); <u>Luna v. Roche</u>, 89 Fed. Appx. 878, 881 n.4 (5th Cir.

2004) ("The ADA does not apply to the federal government."); <u>Dyrek v. Garvey</u>, 334 F.3d 590,

597 n.3 (7th Cir. 2003) ("the ADA does not apply to federal agencies"); <u>Sarvis v. United States</u>,

_____

merit.

No. 99-0318, 2000 WL 1568230, at *2 (2d Cir. 2000) ("'Title II of the ADA is not applicable to

the federal government' . . . . Sarvis therefore cannot proceed against the BOP under the ADA.")

(citation omitted); Whooten v. Bussanich, No. 04-223, 2005 WL 2130016, at *7 (M.D. Pa. Sept.

2, 2005) (noting that the ADA does not contain a waiver of sovereign immunity so it does not

apply to the federal government); Wilson v. MVM, Inc., No. 03-4514, 2004 WL 765103, at *11

(E.D. Pa. Apr. 1, 2004) (noting that the ADA does not apply to any agency or branch of the

federal government).  Therefore, the ADA claims against the defendants must be denied.

   Moreover, even disregarding the fact that the ADA does not apply to federal institutions

and employees, Foreman's allegations of inadequate medical treatment fail to state an ADA

claim because there is no evidence of discrimination. See Bryant v. Madigan, 84 F.3d 246, 249

(7th Cir. 1996) (Posner, C.J.) ("the Act [ADA] would not be violated by a prison's simply failing

to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was

not treated worse because he was disabled.  His complaint is that he was not given special

accommodation. . . ."); Longo v. Barbo, No. 94-3919, 1996 WL 453570, at *4 (D.N.J. Aug. 9,

1996) (finding, like Bryant, that a state prisoner's accusations of inadequate medical treatment

did not state an ADA claim because there was no discrimination alleged).  Here, like Bryant and

Longo, Foreman's alleged deprivations are claims for failure to make special accommodations

for his disability ( i.e. failure to provide special shower chair and shoes), but they are not claims

for discrimination because of his disability.  Because the facts do not support a discrimination

claim, the plaintiff's ADA claims would fail even despite the fact that the ADA does not apply to

federal defendants.

## IV.  CONCLUSION

   For the foregoing reasons, the defendants' motion to dismiss, or in the alternative motion

for summary judgment, will be granted.  Judgment will be entered in favor of the defendants on

plaintiff's Eighth Amendment and ADA claims.

     The accompanying Order shall issue today.

Dated:  __12-20-05_____      __s/ Robert B. Kugler_____
                                  ROBERT B. KUGLER
                                  United States District Judge